IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARK J. BENJAMIN,

                Plaintiff,

      v.

CITY OF ATLANTIC CITY, et al.,

              Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 12-3471 (JBS/AMD)

**OPINION**

APPEARANCES:

Demetrius J. Parrish, Esq.
6024 Ridge Avenue, Suite 116-318
Philadelphia, PA 19128
    Attorney for Plaintiff

Catherine A. Tuohy, Esq.
TUOHY & TUOHY, ESQS.
474 Atlantic Avenue
Atlantic City, NJ 08401
  -and-
Patrick J. Wolfe, Esq.
Sharlenn E. Pratt, Esq.
ZARWIN, BAUM, DEVITO, KAPLAN, SCHAER & TODDY, PC
1818 Market Street, 13th Floor
Philadelphia, PA 19103
    Attorneys for Defendant City of Atlantic City

Grace K. Flanagan, Esq.
Patrick J. Wolfe, Esq.
Sharlenn E. Pratt, Esq.
ZARWIN, BAUM, DEVITO, KAPLAN, SCHAER & TODDY, PC
1818 Market Street, 13th Floor
Philadelphia PA 19103
    Attorneys for Defendant John J. Mooney, III

**SIMANDLE, Chief Judge:**

## I.  Introduction

Plaintiff Mark J. Benjamin, a sergeant in the Atlantic City Police Department, alleges that he suffered racial discrimination at work when he was denied a promotion, when he was demoted to the position of patrolman, and when his internal complaints were not investigated properly, among other things. He also alleges retaliation for complaining about discrimination. He brings this suit against Defendant City of Atlantic City ("the City") and Defendant John J. Mooney, III, the former police chief of the Atlantic City Police Department. Plaintiff is African-American.

Before the Court are two motions for summary judgment, filed by the City [Docket Item 41] and Defendant Mooney [Docket Item 44]. As explained below, even assuming Plaintiff makes a prima facie showing of discrimination and retaliation, Plaintiff does not adduce evidence to counter the City's proffered nondiscriminatory and non-retaliatory justifications for each allegedly adverse employment action. Claims against Defendant Mooney similarly fail because Mooney is not a proper defendant under Title VII or 42 U.S.C. § 1981, and claims against him under the New Jersey Law Against Discrimination ("NJLAD") are time-barred. The Court will grant both motions for summary judgment.

2

## II.  Background

Plaintiff Mark Benjamin, who is black, began working as a police officer in the Atlantic City Police Department ("ACPD") in 1998. (Statement of Undisputed Material Facts ("SMF") [Docket Item 41] ¶ 1.) After a couple of years on patrol, he was assigned continuously to investigative units, which entitled him to a pay increase of 3 percent. (SMF ¶ 8.) Plaintiff did not experience trouble in the police department until 2008.

In November 2008, a newspaper blogger made comments about Plaintiff, allegedly suggesting that Plaintiff was receiving favorable treatment with respect to his assignments, which he did not deserve. (Id. ¶¶ 13-16.) Plaintiff filed an internal complaint against an unknown police officer, suspecting him or her of writing the blog post. (Id. ¶ 15; City Ex. F.) Internal Affairs produced a 10-page report that detailed the discussions the investigating officer had with Plaintiff and others, and the measures taken to investigate the claim. (City Ex. F.) The report states that the Atlantic County Prosecutor's Office declined to conduct a criminal investigation, and Internal Affairs concluded that the internal "investigation failed to disclose sufficient evidence to clearly prove or disprove the allegations." (Id. at 8-9.)

In August or September 2009, Deputy Chief Henry White discussed with Plaintiff a possible appointment to the rank of

Vice Sergeant, which included supervisory duties and a 3 percent
pay increase. (SMF ¶ 33.) White ultimately proposed three names
for the assignment to Chief Mooney, including Plaintiff,
Sergeant Darryl Hall, and one other sergeant. (White dep.
[Docket Item 50-3] at 9:1-11.) White testified that he preferred
that Plaintiff get the assignment, but he did not express that
preference to Mooney. (Id. at 10:12-15.) Mooney selected Hall
for the assignment. (Benjamin dep. [Docket Item 41-2] at 52:4-
7.) Plaintiff testified that he and Hall "had the same
qualifications," and, although Hall had less investigative
training, Plaintiff agreed that Hall "wasn't less qualified in
narcotics, per se." (Id. at 54:7-15, 210:19-23.) Plaintiff
stated he did not have seniority over Hall.[1] (Id. at 62:14-18.)
Plaintiff stated that, in terms of seniority, Hall "might have
me by a couple of months." (Id. at 210:24-211:2.)

In January 2010, Plaintiff filed another complaint with
Internal Affairs after one detective told Plaintiff that two
other officers had called Plaintiff a racist. (SMF ¶¶ 21-23.)
Internal Affairs produced a five-page report which observed
differences of opinions about what happened including denials by

---

[1] When asked whether Plaintiff had seniority over Hall, Plaintiff
stated: "No, not -- at that particular time, no, but as
retribution hereafter, I followed all of this, I've been
exempted." (Id.)

the accused officers. (City Ex. G.) Internal Affairs concluded that the "alleged incident did not occur." (Id. at 5.)

In April 2010, Plaintiff filed charges with the Equal Employment Opportunity Commission. On June 10, 2010, as a result of a budget shortfall, the mayor instituted layoffs and demotions throughout the ACPD. Even Chief Mooney was demoted. (Benjamin dep. at 100:13-18.) Plaintiff, who had achieved the rank of Sergeant, was demoted to patrolman, although he remained one of the top ranking patrolmen. (SMF ¶ 43; Benjamin dep. at 101:7-11.) Plaintiff testified that six sergeants were demoted; three were African-American and three were white. (Benjamin dep. at 104:2-13.) In November 2010, Plaintiff was promoted again to the rank of Sergeant. (SMF ¶ 11.)

When the demoted or laid-off officers turned in their weapons or equipment, Sergeant Stacy Falcone allegedly called Plaintiff a racist. (SMF ¶ 51.) Falcone and Plaintiff exchanged words. Plaintiff filed an Internal Affairs complaint about Falcone's comments. (SMF ¶ 53.) After an internal investigation, Deputy Police Chief Dooley determined that the complaint could not be sustained. (City Ex. H.)

After Plaintiff filed this lawsuit on June 8, 2012, a fellow officer filed an internal complaint against Plaintiff for his handling of a traffic stop to apprehend a suspect for driving under the influence. After an investigation, the

5

complaint was not sustained by Internal Affairs. (City Ex. I.)
Plaintiff was similarly exonerated in a separate matter after he
had been accused of making disparaging remarks about another
officer. (City Ex. J.)

## III. Standard of Review

A court shall grant summary judgment "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). A dispute is "genuine" if, based on the evidence in
the record, a reasonable jury could return a verdict for the
non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986). A fact is "material" if it might affect the outcome
of the suit. Id. Speculation or allegations unsupported by fact
cannot create a genuine issue of fact precluding summary
judgment. Geraci v. Moody-Tottrup Int'l, Inc., 905 F. Supp. 241
247 (W.D. Pa. 1995), aff'd, 82 F.3d 578 (3d Cir. 1996).

The court will view evidence in the light most favorable to
the non-moving party and "all justifiable inferences are to be
drawn in [that party's] favor." Hunt v. Cromartie, 526 U.S. 541,
552 (1999). Fed. R. Civ. P. 56 "mandates the entry of summary
judgment, after adequate time for discovery and upon motion,
against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at

trial." Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

**IV.  The City's Motion for Summary Judgment**

        The City moves for summary judgment on the Title VII claims

(Counts I, II and III) because nondiscriminatory and non-

retaliatory reasons motivated each action taken against

Plaintiff. The City also moves for summary judgment on the claim

brought pursuant to 42 U.S.C. § 1981 (Count IV), because § 1981

provides only rights, not a remedy, and Plaintiff does not bring

claims under § 1983. Finally, the City moves for summary

judgment on the NJLAD claims (Counts V and VI), because the

claims are time-barred and because Plaintiff does not adduce

evidence sufficient to sustain his claim.

        **A.   Title VII claims**

        Title VII makes it unlawful for an employer

        (1) to fail or refuse to hire or to discharge any
        individual, or otherwise to discriminate against any
        individual with respect to his compensation, terms,
        conditions, or privileges of employment, because of
        such individual's race, color, religion, sex, or
        national origin; or

        (2) to limit, segregate, or classify his employees or
        applicants for employment in any way which would
        deprive or tend to deprive any individual of
        employment opportunities or otherwise adversely affect
        his status as an employee, because of such
        individual's race, color, religion, sex, or national
        origin.

42 U.S.C. § 2000e-2(a). The statute also prohibits employers

from retaliating against an employee "because he has opposed any

practice made an unlawful employment practice by this
subchapter, or because he has made a charge, testified,
assisted, or participated in any manner in an investigation,
proceeding, or hearing under this subchapter." 42 U.S.C. §
2000e-3(a). The statute defines the term "employer" as "a person
engaged in an industry affecting commerce who has fifteen or
more employees for each working day in each of twenty or more
calendar weeks in the current or preceding calendar year, and
any agent of such a person," with certain exceptions not
relevant here. 42 U.S.C. § 2000e(b).

Where, as here, the plaintiff does not have direct evidence
of racial discrimination (see Pl. Opp'n [Docket Item 50] at 18
("indirect evidence to the effect that Plaintiff Benjamin was
discriminated against . . . exists")), the Third Circuit employs
the flexible burden-shifting framework announced in McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Burton
v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). First, the
plaintiff must establish a prima facie case of racial
discrimination. McDonnell Douglas, 411 U.S. at 802. Although the
prima facie proof required will vary in differing factual
situations, on a claim alleging the failure to promote, the
plaintiff must prove by a preponderance of the evidence that (1)
he is a member of a racial minority, (2) he applied and was
qualified for an available position, (3) he was not selected,

8

despite his qualifications, and (4) the employer instead
selected a non-member of the protected class or continued to
consider candidates who shared the plaintiff's qualifications.
See id.; Bray v. Marriott Hotels, 110 F.3d 986, 989-90 (3d Cir.
1997); Bennun v. Rutgers State Univ., 941 F.2d 154, 170 (3d Cir.
1991).

Upon a prima facie showing, the burden of production shifts
to the defendant to offer a legitimate, nondiscriminatory
justification for the adverse employment action. Burton, 707
F.3d at 426. Then the burden shifts back to the plaintiff to
"provide evidence from which a factfinder could reasonably infer
that the employer's proffered justification is merely a pretext
for discrimination." Id. Plaintiff's evidence "must demonstrate
such weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's proffered
legitimate reasons for its action that a reasonable factfinder
could rationally find them unworthy of credence." Id. at 427
(quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994))
(internal quotation marks omitted).

### 1. Discrimination under § 2000e-2(a)(1)-(2) (Counts I and II)

Plaintiff alleges that the City discriminated against him
"on the basis of race by denying him employment rights and
privileges afforded white police officers, and by disregarding

and denying his complaints of racial harassment, all on the basis of race, which is Black, [and] discriminated against the Plaintiff in the terms, conditions and privileges of his employment." (Compl. ¶ 40.)

The City characterizes these counts as alleging hostile work environment claims and argues that summary judgment is appropriate because Plaintiff "cannot prove that he suffered intentional discrimination because he is a member of a protected class or that the discrimination was severe or pervasive." (City Mot. Br. at 32-33.) The City argues that the "police department was responsive to all of plaintiff's complaints," that a white officer was assigned to Vice Sergeant instead of Plaintiff because the white officer had more seniority and was as qualified as Plaintiff, and that Plaintiff's demotion from sergeant to patrolman was part of a blanket "reduction in force implemented by the mayor in June 2010 due to economic reasons," pursuant to N.J.S.A. § 40A:14-143.[2] (Id.)

---

[2] The statute provides that the City may, for economic reasons,

> decrease the number of members and officers of the
> police department or force or their grades or ranks.
> In case of demotion from the higher ranks, the
> officers or members to be so demoted shall be in the
> inverse order of their appointment. When the service
> of members or officers is terminated, such termination
> shall be in the inverse order of their appointment.
> Any member or officer who is demoted or whose service
> is terminated by reason of such decrease shall be
> placed on a special employment list, and in the case

Plaintiff pursues Count I and II by arguing that his claims "are not a figment of his imagination, but are corroborated by other employees of superior rank." (Pl. Opp'n [Docket Item 50] at 12.) In support, he points to the deposition of Lt. Meyers, in which Meyers, who is white, arguably shared Plaintiff's sense of the lack of opportunity for minorities within the department for black officers. He testified as follows:

> Q: Do you know whether or not Sergeant Benjamin had complained about the lack of opportunity within the police department?
> A: Yes, sir.
> Q: Are you aware of those?
> A: Yes.
> Q: Were you aware of them?
> A: Yes.
> Q: How were you aware of them?
> A: We'd have conversations all the time. I mean, we'd work directly together eight hours a day, three to five days a week.
> Q: Did you agree with him?
> A: I made the same complaints myself.

(Meyers dep. [Docket Item 50-1, Ex. A] at 13:4-19.) The City disputes the meaning of Meyers's ambiguous testimony. According to the City, "Lt. Meyers also felt that he (a white male) made the same complaints about the lack of opportunity within the police department. Lt. Meyers did not testify that he believed

---

of subsequent promotions, a person so demoted shall be reinstated to his original rank and in the case of termination of service and new appointment, prior consideration shall be given to the persons on said special employment list.

N.J.S.A. § 40A:14-143.

there was a lack of opportunity for blacks within the police department contrary to plaintiff's representation." (City Reply [Docket Item 56] at 2.)

The only other evidence Plaintiff cites in support of Counts I and II is deposition testimony by Captain Gregory Anderson, who, Plaintiff maintains, "corroborated the Plaintiff's claims of race discrimination . . . ." (Pl. Opp'n at 12.) Plaintiff points to testimony in which Anderson stated that he and Plaintiff discussed "what we perceived as, you know disparate treatment," and "a feeling that, you know, you're not being treated fairly and others are being treated better, basically" in terms of assignments and opportunities. (Anderson Dep. [Docket Item 50-2, Ex. B] at 16:4-17:2.) Anderson testified that after he was promoted to the position of lieutenant, he met with Chief Mooney and Deputy Chief Nolan and explained he did not think it was fair that an assignment that carried a three-percent pay increase was taken away from him after he was promoted to lieutenant; the rank of lieutenant was newly created and the practice of eliminating special assignments was not officially "stipulated" within the department. (Id. at 17:14-19:8.) Anderson said that he accepted the promotion knowing that it might result in lower pay, because there was "an absence . . . of minorities in the upper ranks," and he said he that he believed, at the time, he was the only person promoted who had a

12

"three percent assignment" taken away. (Id. at 19:5-19.)
Reacting to Anderson's explanation of why he took the promotion,
Nolan reportedly "raised his voice and started yelling at me
like don't even go there, like that." (Id. at 19:19-20:2.)

Plaintiff also cites testimony from Anderson in which he
stated that he discussed with Plaintiff "some incidents"
Plaintiff had experienced, "the lack of representation in
certain units," and how "sometimes the disciplinary process
seemed to be harsher, you know, for minorities than others. And
generally speaking, just the working conditions. The perks that
others had that a lot of minorities didn't." (Id. at 21:22-
22:8.) Anderson also testified that he and Plaintiff went to the
mayor's office and discussed with a representative the
"[g]eneral conditions in the police department" and "[t]hings we
had, you know, seen and heard about, you know, things that have
happened to some of us." (Id. at 22:9-23:8.)

Without other citations to the record, Plaintiff argues
that "there is viable evidence to support Plaintiff Benjamin's
Title VII causes of action . . . , and they remain viable. The
Defendant has not shown that the issue regarding these counts
are so [c]lear and free from doubt as to entitle it to a grant
of summary judgment in its favor." (Pl. Opp'n at 13.)

The Court pauses to clarify a preliminary matter: Plaintiff
need not allege a hostile work environment to state a claim

13

under Title VII. The statute prohibits an employer from refusing to hire or discharging or otherwise discriminating against an individual because of his race. 42 U.S.C. § 2000e-2(a)(1). A single, discrete instance of racial discrimination could provide the basis for a successful Title VII claim. Therefore, the City's argument that any alleged discrimination was not so severe or pervasive as to constitute a hostile work environment is not dispositive of Plaintiff's claims.

Plaintiff does not attempt to explain what evidence in the record supports a prima facie case of racial discrimination, nor does Plaintiff evince an awareness of the burden-shifting framework that governs his Title VII claims. However, the record clearly supports a prima facie case of racial discrimination. Plaintiff meets his initial burden by demonstrating that he was a member of a racial minority, that he was demoted despite his qualifications for the position, and alleging that this was the result of racial discrimination. He also meets his initial burden by demonstrating that was denied a promotion and that his municipal employer instead hired a white colleague with similar qualifications. The Court will assume that he also makes a prima facie showing of race discrimination by demonstrating he made several complaints of discrimination and arguing the complaints were ignored.

14

In response, the City has met its burden of production by offering nondiscriminatory reasons for all of the allegedly discriminatory conduct. The City proffers evidence that Plaintiff was demoted as part of a large-scale reduction in force that affected individuals regardless of race. (Benjamin dep. [City Ex. B] at 100:13-101:12) (describing how layoffs and demotions followed a budget shortfall and how more senior employees would displace lower ranking employees); id. at 104:6-13 (stating that three of the demoted sergeants were African-American and three were white).) Plaintiff later was promoted back to the rank of sergeant, the title he currently holds. (See Pl. Opp'n at 1 ("Plaintiff is currently a Sergeant of Police in the Atlantic City Police Department.").) The City also adduces evidence that Plaintiff was not promoted to Vice Sergeant because the man selected for the position was as qualified as Plaintiff and had more seniority, and because Deputy Chief White did not expressly indicate a preference for Plaintiff over the other two names advanced for consideration. (See White dep. [City Ex. C] at 9:5-11, 10:8-15 (testifying that White advanced three names to Mooney, including the eventual choice for Vice Sergeant, and did not tell Mooney that White preferred Plaintiff); Benjamin dep. at 210:24-211:5 (agreeing that Sergeant Hall was qualified to be Vice Sergeant and that "he might have me by a couple of months" in seniority).) Finally,

15

the City has submitted, under seal, Internal Affairs investigative reports responding to Plaintiff's internal complaints, countering Plaintiff's claim that the complaints were ignored; the record indisputably shows the complaints were not ignored and that Internal Affairs undertook meaningful investigations.

Plaintiff has the burden of showing that a reasonable jury could infer that the City's proffered justification is "merely a pretext for discrimination," Burton, 707 F.3d at 426, and Plaintiff has not met this burden. Plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. at 427. However, Plaintiff points only to testimony by two fellow officers who describe a vague perception or awareness of a general lack of opportunity for black officers without discussing the events underlying this lawsuit. Plaintiff does not adduce evidence undermining Plaintiff's own testimony that Sergeant Hall "might have me by a couple of months" in seniority or that he was qualified for the job; that Plaintiff's demotion was part of a reduction in force determined by seniority that affected police of various ranks and races; or that the department did investigate Plaintiff's internal complaints.

16

Nonspecific testimony about perceived unfairness does not support a reasonable inference that discriminatory animus caused Plaintiff's specific adverse employment actions. The undetailed suppositions of Plaintiff and fellow officers cannot carry Plaintiff's burden to show that the proffered nondiscriminatory justifications are pretextual or unworthy of credence.[3] See Geraci, 905 F. Supp. at 247-48 ("speculation unsupported by fact cannot create a genuine issue of fact precluding summary judgment"); Raniero v. Antun, 943 F. Supp. 413, 423 (D.N.J. 1996) (holding that the plaintiff's "opinion he was discriminated against is insufficient to defeat this summary judgment motion"); cf. Henson v. U.S. Foodservice, No. 11-1809, 2013 WL 6080359, at * (D.N.J. Nov. 19, 2013), appeal docketed, No. 13-4711 (3d Cir. Dec. 18, 2013) (stating that "[p]erception like speculation and suspicion cannot support a cause of

---

[3] Plaintiff requests that the Court disregard testimony of all "interested witnesses," citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). (Pl. Opp'n at 11.) However, the Third Circuit has instructed the district court to "believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 272 (3d Cir. 2007). The court added: "We cannot believe that the law precludes a party from presenting his own testimony on a summary judgment motion . . . ." Id. at 271. In the wake of Lauren W., other district courts in this Circuit have refused to read Reeves, which concerned credibility determinations in the context of Fed. R. Civ. P. 50, as Plaintiff urges here. See Gazdick v. Solis, No. 10-1062, 2013 WL 1909576, at *9-*10 (M.D. Pa. May 8, 2013); Turner v. Luzerne Cnty., No. 10-814, 2013 WL 791450, at *8 (M.D. Pa. Mar. 4, 2013); Phinizy v. Pharmacare, 569 F. Supp. 2d 512, 517-18 (W.D. Pa. 2008).

action," in the context of an NJLAD hostile work environment
claim). Even if a factfinder were to accept the testimony of
Anderson and Meyers as true -- that there was a lack of
opportunity for black officers in the ACPD and that the
witnesses observed some unspecified incidents of discrimination
-- those general facts do not compel the conclusion that
Plaintiff suffered racial discrimination when he was demoted,
when he was not promoted to the position of Vice Sergeant, and
when he made internal complaints about racism, given the City's
unchallenged justifications for these decisions. Without more,
Plaintiff has not met his burden under McDonnell Douglas.

Because Plaintiff has not created a genuine issue of fact
for trial, summary judgment will be entered for the City.

### 2. Retaliation under § 2000c-3(a) (Count III)

To make a prima facie case of retaliation under Title VII,
the "plaintiff must show that (1) she engaged in a protected
activity under Title VII; (2) the employer took an adverse
action against her; and (3) there was a causal connection
between the employee's participation in the protected activity
and the adverse employment action." Wilkerson v. New Media Tech.
Charter Sch. Inc., 522 F.3d 315, 320 (3d Cir. 2008). "Causation
may be proven by 'circumstantial evidence sufficient to raise
the inference that [the] protected activity was the likely
reason for the adverse action.'" Grazioli v. Genuine Parts Co.,

18

409 F. Supp. 2d 569, 582 (D.N.J. 2005) (quoting Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)). The Third Circuit applies the McDonnell Douglas framework to retaliation claims under Title VII where the evidence of discrimination is circumstantial. McKenna v. City of Philadelphia, 649 F.3d 171, 178 n.7 (3d Cir. 2011); see also Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278-79 (3d Cir. 2000), for this proposition).

In the Complaint, Plaintiff claims that Chief Mooney and the City "discriminated against the Plaintiff because he opposed and complained about practices made unlawful under 42 U.S.C. § 2000c-1." (Compl. ¶ 48.) Among the alleged retaliatory acts are the demotion of Plaintiff (id. ¶ 35) and denial of "customary pay increases on the basis of his race" (id. ¶ 34).

The City moves for summary judgment on the retaliation claim because, as argued with respect to Counts I and II, the demotion was part of a widespread reduction in force as a result of a budgetary shortfall. (City Mot. Br. at 34.) Plaintiff responds:

> With respect to Count III, Retaliation under Title VII, Deputy Chief White recommended Plaintiff Benjamin for the position of supervisor in the special investigation section because his work product while he was in the vice unit was excellent, but Defendant Mooney denied it. (White Dep, 7/8/2013, P. 7, Line 16 - P. 8, Line 24). Captain Anderson believed that

retaliation may have played a part in the way
Plaintiff Benjamin was treated. (Anderson Dep., P. 26,
Line 3.)

(Pl. Opp'n at 13.)

Plaintiff points to no evidence in support of a retaliation
claim based on a demotion or denial of routine pay increases.
Rather, Plaintiff focuses on the denial of assignment as Vice
Sergeant. Plaintiff cites, again, the deposition testimony of
Deputy Chief White, who stated that he advanced Plaintiff's name
for the Vice Sergeant position, but Plaintiff does not cite a
later portion of White's testimony in which he stated he
advanced two other names but did not tell Chief Mooney that he
preferred Plaintiff for the job. (White dep. [Docket Item 50-3]
at 9:5-8, 10:8-15.) The cited portion of Captain Anderson's
testimony, with surrounding context, reads as follows:

> Q. Did Mr. Benjamin ever say to you that he felt that
> because of his complaining about police conduct with
> the department that he was being singled out or
> retaliated against?
> A. Yes, he, you know, made that clear that he believed
> that, you know, this was the case.
> Q. Did you believe that fact to be true?
> A. I believed it could have been part of it, yes.
> Q. Do you believe that Chief Mooney had anything to do
> with it?
> A. It's possible. I don't have any facts, but he was -
> - I know the Chief during some of these things, and
> the Chief is the Chief, and basically determines how
> things are run and how the assignments go.

(Anderson dep. [Docket Item 50-2] at 25:16-26:10.)

Assuming that Plaintiff has established a prima facie case
of retaliation, and to the extent Plaintiff's retaliation claim
is based on the denial of assignment as Vice Sergeant, the claim
must fail because Plaintiff has not undermined the City's
proffered justification that Mr. Hall was selected for Vice
Sergeant because he had more seniority. Plaintiff's and Captain
Anderson's unsupported beliefs that retaliation "possibl[y]"
played some "part" in Hall's assignment as Vice Sergeant does
not seriously undermine the City's explanation of the assignment
and cannot provide a basis for a reasonable factfinder to infer
that retaliation was the likely cause of Hall's selection.
Plaintiff must provide more to cast doubt on the City's
nondiscriminatory explanation than unsupported speculation by
Plaintiff and his colleague.

To the extent Plaintiff's retaliation claim is based on
Plaintiff's demotion, the claim similarly fails because
Plaintiff does not undermine evidence of a widespread reduction
in force that affected individuals regardless of race, as
explained above. The parties do not point to evidence in their
briefs that concerns Plaintiff's failure to receive pay
increases, and the Court will not consider this further as part
of Plaintiff's claim for retaliation.

Because Plaintiff has not carried his burden, the Court
will enter summary judgment for the City on Count III.

**B.   Section 1981 claim**

The City seeks summary judgment on the § 1981 claim,
arguing that § 1983 is the exclusive remedy for rights created
under § 1981. The Third Circuit has held that "Congress, in
promulgating § 1983 over a century ago, established that section
as the exclusive remedy for violations of § 1981 by state
actors. Nothing in subsequent history, including amendments to
the 1991 Act, changed that remedial scheme." McGovern v. City of
Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009). In other words,
"while § 1981 creates rights, § 1983 provides the [exclusive]
remedy to enforce those rights against state actors." Id. at 116
(emphasis in original). Lower courts in this Circuit, and
nonprecedential opinions from the Third Circuit, continue to
follow McGovern on this point. See, e.g., Alers v. City of
Philadelphia, 919 F. Supp. 2d 528, 556-57 (E.D. Pa. 2013);
Brodie v. Gloucester Twp., No. 11-1914, 2012 WL 295291, at *5
(D.N.J. Feb. 1, 2012); Brown v. SEPTA, No. 13-2467, 2013 WL
4804381, at *4 (3d Cir. Sept. 10, 2013).

Plaintiff argues that McGovern was wrongly decided, and
maintains that, in direct contradiction of McGovern, the 1991
amendments to § 1981 created a remedy independent of § 1983.[4]

---

[4] In Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989), the
U.S. Supreme Court held that § 1983 "provides the exclusive
federal damages remedy for the violation of the rights
guaranteed by § 1981 when the claim is pressed against a state

(Pl. Opp'n [Docket Item 50] at 15.) It should not be necessary
to state that this Court must follow binding precedent from the
Third Circuit. Vujosevic v. Rafferty, 844 F.2d 1023, 1030 n.4
(3d Cir. 1988) ("It is, of course, patent that a district court
does not have the discretion to disregard controlling
precedent"). Because McGovern controls, and because Plaintiff is
clear that "[n]one of the six counts of the Plaintiff's
Complaint is brought under § 1983," (Pl. Opp'n at 12), the Court
will enter summary judgment in favor of the City.

   C.   **NJLAD claims**

   The New Jersey Law Against Discrimination provides in
relevant part that it is "an unlawful employment practice" or
"an unlawful discrimination" for "an employer, because of the
race, creed, [or] color, . . . of any individual . . . to
discriminate against such individual in compensation or in
terms, conditions or privileges of employment . . . ." N.J.S.A.
§ 10:5-12(a). It is also illegal for "any person to take
reprisals against any person because that person has opposed any
practices or acts forbidden under this act or because that
person has filed a complaint, testified or assisted in any
proceeding under this act . . . ." N.J.S.A. § 10:5-12(d). All
NJLAD claims are evaluated using the McDonnell Douglas burden-

---

actor." Jett, 491 U.S. at 735. McGovern held that the 1991
amendments did not disturb the Jett decision. McGovern, 554 F.3d
at 121.

shifting mechanism. <u>Battaglia v. United Parcel Serv., Inc.</u>, 214 N.J. 518, 546 (2013).

The City again construes Plaintiff's Complaint as alleging hostile work environment claims (City Mot. Br. at 40), and Plaintiff rejects this characterization. (Pl. Opp'n at 17.) The City argues that the state claims fail as a matter of law (City Mot. Br. at 40-44), and the City adds that NJLAD claims are barred by a two-year statute of limitations, citing <u>Montells v. Haynes</u>, 133 N.J. 282, 292 (1993). (City Mot. Br. at 39.)

For the same reasons Plaintiff's claims fail under <u>McDonnell Douglas</u> and Title VII, as explained above, the NJLAD claims fail. In addition, the City is correct that NJLAD claims are governed by a two-year statute of limitations. <u>Roa v. Roa</u>, 200 N.J. 555, 566 (2010). Therefore, most of the discrete adverse employment actions alleged in the Complaint cannot form the basis for a timely NJLAD claim. Only Plaintiff's demotion on June 11, 2010, could provide the basis for a timely claim under the NJLAD, but, as discussed above, Plaintiff has not adduced sufficient evidence for a reasonable factfinder to infer that that reduction in force was pretextual or likely the result of retaliation.

Therefore, the Court will enter summary judgment on Plaintiff's NJLAD claims.

**D.   Conclusion**

For the reasons explained above, the Court will enter summary judgment in favor of the City on all of Plaintiff's claims.

**V.   Defendant Mooney's Motion for Summary Judgment**

Defendant Mooney argues that he is entitled to summary judgment on all counts because he is not a proper party under either Title VII or § 1981 and because NJLAD claims are barred by the statute of limitations.

**A.   Title VII liability for individuals**

Defendant Mooney argues that, according to Third Circuit law, individuals cannot be liable under Title VII. (Mooney Mot. Br. [Docket Item 44] at 13-15.) Indeed, the Third Circuit has held that "Congress did not intend to hold individual employees liable under Title VII." Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1077 (3d Cir. 1996).[5]

---

[5] This Court recently considered at length the issue of individual liability under Title VII. Gretzula v. Camden Cnty. Technical Schs. Bd. of Educ., --- F. Supp. 2d ---, 2013 WL 4430824, at *4 (D.N.J. Aug. 14, 2013). The Court began with the observation that "Third Circuit jurisprudence is clear that Title VII does not subject individual supervisory employees to liability . . . ." Id. (citing Sheridan, 100 F.3d at 1078, among others). After noting conflicting precedent on Title VII claims against individuals in their official capacities, the Court held that "Title VII provides for liability against employers, not supervisors." Id. at *5-*6. The Court dismissed Title VII claims against a superintendent of the school board, who had supervised the plaintiff-director of special education, stating that "Plaintiff cannot bring a Title VII claim against [his supervisor] in his official capacity." Id. at *1, *5-*6. The

Plaintiff acknowledges the holding in <u>Sheridan</u>, but argues that "the Third Circuit decision was improperly decided and, until such time as the U.S. Supreme Court decides the issue, Defendant Mooney is an agent of Defendant Atlantic City Police Department and, therefore, an employer capable of being sued." (Pl. Opp'n [Docket Item 45] at 11.[6]) Plaintiff unpersuasively argues that this case is distinguishable from <u>Sheridan</u> because, in that case, the defendant was the plaintiff's immediate supervisor, whereas here, Defendant Mooney has a "Senior Supervisory" position and is not the immediate supervisor of Plaintiff. (Pl. Opp'n at 12.) Plaintiff does not explain the materiality of such a distinction, and the Court finds no reason to depart from <u>Sheridan</u> and its progeny, which hold that individuals cannot be liable under Title VII. The Court will enter summary judgment for Defendant Mooney on Counts I, II, and III.

---

Court further observed: "Naming a supervisor as a defendant in his official capacity is redundant especially when, as in this case, the employer is named as a Defendant." <u>Id.</u>, at *6.

The analysis in <u>Gretzula</u> applies in full force to this case, where Plaintiff likewise alleges Title VII claims against an individual supervisory employee and named the municipal employer as a defendant.

[6] All references to Plaintiff's opposition brief in Section V refer to Docket Item 45.

**B. Section 1981**

Defendant Mooney, like the City, seeks summary judgment on Count IV, because § 1981 provides no private right of action against state actors. (Mooney Mot. Br. at 15-16.) Again, Plaintiff offers no persuasive reason to disregard the controlling precedent of McGovern, discussed supra Part IV.B. Rather, Plaintiff argues that § 1981 does provide a remedy against state actors because plaintiffs can recover attorneys' fees and compensatory damages for § 1981 actions against state actors. (Pl. Opp'n at 16.) This fact provides no basis for straying from the holding in McGovern that § 1983 is the exclusive remedy for § 1981 claims against state actors.[7] Because Plaintiff is adamant that he "does not allege that any of his claims arise under 42 U.S.C. § 1983," (see Pl. Opp'n at 17), and because § 1981 does not create a private right of action against state actors, see McGovern, 554 F.3d at 121, the Court will enter summary judgment for Defendant Mooney on Count IV.

---

[7] See, e.g., Allen v. Sweeney, No. 11-5602, 2012 WL 5897584, at *6 (E.D. Pa. Nov. 20, 2012) ("freestanding § 1981 claims cannot be pursued against state actors"); A v. Gloucester Twp., No. 10-4062, 2011 WL 2973644, at *4 (D.N.J. July 21, 2011) (dismissing a § 1981 claim because "§ 1983 constitutes the exclusive federal remedy for violation of rights guaranteed in § 1981 by state governmental units"); Hill v. Se. Pa. Transp. Auth., No. 09-5463, 2010 WL 3490025, at *2 (E.D. Pa. Sept. 1, 2010) (same).

### C. NJLAD claims

Defendant Mooney seeks summary judgment on the remaining NJLAD claims because the claims are time-barred. (Mooney Mot. Br. at 23.) Mooney argues that a two-year statute of limitations applies to NJLAD claims, citing <u>Montells</u>, 133 N.J. at 292, among others, and, because it is undisputed that Mooney left the police department more than two years before Plaintiff filed his Complaint, the NJLAD claims are time-barred. (<u>See</u> Mooney Ex. C at 7:13-15.)

Plaintiff argues that the statute of limitations is four years, not two, because New Jersey courts have "adopted the federal framework for determining when an NJLAD claim accrues," and a four-year statute of limitations applies to § 1981 claims. (Pl. Opp'n at 21.) Plaintiff misapprehends the relevant law. New Jersey courts look to federal law to determine whether an act of discrimination or retaliation is "discrete" or "continuous," which affects when the limitations clock begins to run, <u>see</u> <u>Roa</u>, 200 N.J. at 566-67, but New Jersey courts do <u>not</u> borrow limitations periods from federal statutes for NJLAD claims. Indeed, the New Jersey Supreme Court has stated unequivocally that "[t]he statute of limitations for LAD claims is two years." <u>Id.</u> at 566.

Plaintiff does not allege that Defendant Mooney discriminated or retaliated against him at the workplace after

Mooney left the police department on May 27, 2010. Because Plaintiff did not file this suit until June 8, 2012, all claims against Defendant Mooney under the NJLAD are time-barred. Summary judgment will be entered in favor of Defendant Mooney on Counts V and VI.

### D. Conclusion

For the reasons explained above, the Court will enter summary judgment in favor of Defendant Mooney on all counts.

## VI.   Conclusion

The Court will grant both motions for summary judgment. An accompanying Order will be entered.

<u>__March 5, 2014__</u>                       <u>__s/ Jerome B. Simandle__</u>
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge